IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2754 T
(JUDGE WHEELER)

XO COMMUNICATIONS, INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant

SECOND SUPPLEMENTAL BRIEF FOR THE
UNITED STATES IN SUPPORT OF ITS CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION
TO XO'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

At issue is XO's claim for refund of telephone excise tax with respect to its use of certain telephone service to route the telecommunication traffic of callers in various local telephone calling areas to XO's network. Pending before the Court are XO's motion for summary judgment and the cross-motion of the United States for partial summary judgment on the legal issue of whether the local telephone service used by XO in its network is subject to the tax imposed by § 4251. The relevant facts and applicable law are set forth in defendant's prior filings in support of its cross-motion, and are not repeated here. On November 30, 2005, the Court held a hearing concerning the technical aspects of the

local service and heard from XO's witness, Greg Langston, and from defendant's expert witness, Dr. Michael Hills.

By its Order of October 11, 2006, the Court requested the parties to file supplemental briefs "addressing the extent to which the Internal Revenue Service ("IRS") currently imposes a tax on internet access and related internet communications." Pursuant to the Court's Order, defendant submits the following supplemental brief.

DISCUSSION

A. Telecommunication Technology and Internet Access

"Internet access" is the method by which users connect to the Internet, usually through an Internet Service Provider (ISP). *Newton's Telecom Dictionary* 361 (17th Ed. 2001). An ISP, such as XO, typically uses various telecommunications services to provide access to the Internet. (Pl. Ex. I at 5.)[1] Internet access is also available through cable TV coaxial cable service providers. *Newton's* at 362. The Internal Revenue Code does not contain any provision which imposes a tax on the business of providing Internet access, either through the use of telecommunication services or cable TV service. ISPs providing Internet access by using telecommunication services, however, are responsible for the taxes imposed on the underlying telecommunications services under §§ 4251-4254. Thus, the excise tax on the local telephone

[1] Citations to "Pl. Ex." refer to plaintiff's exhibits accompanying its motion for summary judgment.

service at issue here is not a tax imposed on the business of providing Internet access itself, but rather on the underlying telecommunication services purchased by XO to provide Internet access to its customers.

The underlying telecommunications services at issue here, channelized T-1 and PRI services, are essentially fungible telecommunication technologies.[2] That is, the services are capable of being used in a wide variety of telecommunication uses. *Newton's* at 548, 669. Specifically, T-1 service is a digital transmission service capable of carrying 1,544,000 bits per second with up to 24 separate voice channels. (Pl. Ex. I at 2.) Thus, T-1 service may be used to replace 24 traditional single-line voice circuits.[3] *Newton's* at 669. XO used the T-1

---

[2] It is important to note that the T-1 and PRI services do not stand alone–they are dependent on the carrier's related switching and transmission technologies which are necessary to direct and connect calls from other callers. *See* (Tr. at 46, November 30, 2005):

THE COURT: So that's the only physical equipment [T-1 and PRI] if you will that the phone company would provide for this service?
THE WITNESS: They are providing everything else at the central office that interconnects those lines to the central office switch and provides the signaling capability and everything else that is required. They are providing more than a pair of wires. They are providing the service at the central office.

[3] The decision whether to use 24 separate voice channels or T-1 service is primarily a matter of economics, rather than technical capability. *Newton's* at 669.

service for just this purpose.[4] Years ago, T-1 service was delivered on two pairs of unshielded copper wires–-one pair for transmitting, and one pair for receiving. *Ibid*; (Tr. at 46, November 30, 2005.) Currently, T-1 service is typically delivered on fiber optic lines which are capable of bi-directional transmission, but it also may be provided via microwave or satellite transmission technology. *Newton's* at 669. T-1 service is capable of being used for voice communications (24 voice-grade channels), data communications, network access applications, and private line networking (such as a private branch exchange (PBX)). *Ibid*.; (Pl. Ex. I at 5).

Similarly, PRI service is another digital service (related to ISDN service) which provides the same service capability as 23 separate traditional copper-wire single-line voice circuits, but more efficiently, and usually at less cost. (Pl. Ex. I at 4); *Newton's* at 373-5, 548. PRI service can be used for regular voice communication, networking, and voice processing systems (*i.e.*, PBX systems). *Newton's* at 373-5, 548. XO used PRI service when T-1 service was not available because PRI service is

---

[4] Q And why did Concentric [XO] purchase channelized T-1?
A We had to have channelized T-1 to be able to provide dial access. Our only alternative to that would have been to bring in individual phone lines by themselves.
Q And have different numbers for those individual phone lines?
A Correct.
(Tr. at 11-12, November 30, 2005.)

the functional equivalent of T-1 service. (Tr. at 13, November 30, 2005.)

Accordingly, while T-1 and PRI services are technological improvements to the electro-mechanical telecommunication technology they replaced, they do not represent “new” telecommunication services. Rather, T-1 and PRI services replaced previous technology (copper-wire single line voice circuits) that was used to provide access to local and long distance services with technology that was more efficient and cheaper, but which still provide the same access to local and long distance services described in § 4252. The underlying technology used to deliver a telecommunication service is immaterial to the incidence of the telecommunications excise tax as long as the service itself satisfies the terms of the statute. While T-1 and PRI technology may not have existed in 1965, local telephone service, as used by XO to provide its customers access to the Internet, did exist in 1965 and is defined in § 4252(a). Moreover, XO’s, or any customer’s, ultimate use of a telecommunication service is immaterial to the incidence of the excise tax. XO could have used the same T-1 and PRI technologies to provide local access for an internal computer network, a PBX, or a videoconferencing service.

For example, in Revenue Ruling 79-245, 1979-2 C.B. 380, a business leased various computer equipment to create a

proprietary computer network. The business's computer handled data received over the regular telephone network from terminals at other locations. The modems were only for nonvoice transmission and produced a signal which was usable only for transmission to other computer stations. The business did not use the network for voice communication. The business purchased telephone service to connect its computer and terminals. Thus, the business's network was connected through the local telephone exchange, and anyone anywhere could connect to a station in the network by dialing the telephone number of that station. To prevent access to the system from outside the business, the numbers were unlisted and a special security code had to be used to activate the equipment after the telephone connection was established.

The ruling held that the telephone service used in the network was subject to the excise tax. The ruling reasoned that because the business had access to the local telephone exchange system through the telephone lines used with the computer network, it had the privilege of telephonic quality communication with substantially all persons having telephones in the local system within the meaning of § 4252(a). The ruling does not describe the underlying telecommunication technology that was used by the telephone company to provide the service to the

business's computer network.[5] No matter which technology was used, however, the local service provided by that technology was subject to the excise tax.

XO's network is analogous to the computer network in Rev. Rul. 79-245. XO, however, used its network to link customers to the Internet instead of providing intra-company data network communication. Both networks use local telephone service which furnish the privilege of telephonic quality communication with substantially all persons having telephones in the local system. Just as the nature of the underlying telecommunication technology was not germane to the holding in Rev. Rul. 79-245, it is not germane to the application of the excise tax to the local telephone service used by XO here.

B. Taxation of Internet Access

There is no federal legislation, in the Internal Revenue Code or elsewhere, which imposes a federal tax on the business of providing Internet access. Indeed, the only federal legislation that addresses the subject of taxation of the Internet involves taxes imposed by States and localities--*i.e.*, the Internet Tax Freedom Act, enacted in 1998. Pub. Law No. 105–277, Div. C, Title XI, §§ 1100 to 1104, 112 Stat. 2681–719 (1998) (current version at 47 U.S.C. § 151 note). The Act imposed a temporary

---

[5] It may have been a series of single-line voice wires, it may have been copper-wire T-1 technology, or it may have been fiber optic T-1 technology.

moratorium on State and local taxes on the Internet, beginning October 1, 1998. Initially, it was in effect through October 21, 2001, and it has since been extended through 2007.[6] Section 1101(a) of the Internet Tax Freedom Act states:

> **§ 1101. Moratorium**
>
> **(a) Moratorium.**--No State or political subdivision thereof shall impose any of the following taxes during the period beginning on October 1, 1998, and ending 3 years after the date of the enactment of this Act—
>
> **(1)** taxes on Internet access, unless such tax was generally imposed and actually enforced prior to October 1, 1998; and
>
> **(2)** multiple or discriminatory taxes on electronic commerce.

Section 1101(e)(3(D) of the Internet Tax Freedom Act defines "Internet access service" as follows:

> **(D) INTERNET ACCESS SERVICE.**—The term "Internet access service" means a service that enables users to access content, information, electronic mail, or other services offered over the Internet and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers. Such term does not include telecommunications services.

It is clear from the language of the Internet Tax Freedom Act that it applies only to the imposition of taxes on Internet

---

[6] In 2001, the moratorium of the Internet Tax Freedom Act was extended, without change, for two more years. Internet Tax Nondiscrimination Act, Pub. Law No. 107-075, 115 Stat. 703. In 2004, the moratorium of the Internet Tax Freedom Act was extended through 2007, with some changes not relevant to the periods in suit here, by the Internet Tax Nondiscrimination Act. Pub. Law No. 108–435, 118 Stat. 2615 (2004).

access by States and localities, and not to the imposition of federal taxes. Moreover, even if the Act were not restricted to States and localities, it would not apply to the § 4251 federal communication excise tax because the Act's definition of "Internet access service" explicitly exempts underlying telecommunications services.[7] Finally, even if it were not restricted to States and localities and did not exempt telecommunications services, the Act would not apply because the long-standing federal telecommunications excise tax was generally imposed and actually enforced prior to October 1, 1998. *See generally,* H.R. Rep. No. 108-234 at 8-10 (2003); *Concentric Network Corp. v. Commonwealth*, 897 A.2d 6 (Pa. Commw. Ct. 2006).

Accordingly, there is no federal tax imposed on the business of providing Internet access service. The § 4251 federal communications excise tax, however, *is* applicable to the underlying telecommunication services used to provide Internet access service--as is any other voice or data communication service that uses the taxable services described in § 4252. Thus, the local service used by XO in its network is a taxable communication service under §4252(a).

---

[7] "The exclusion of 'telecommunications' is based on the ITFA's fundamental premise that Internet access services are separate from the underlying telecommunications infrastructure on which they currently depend." Kenneth H. Silverberg and Mark M. Foster, *Internet Tax Freedom Act: Will it be a Success or a Failure,* J. Multistate Tax'n, July, 1999, at 2.

## CONCLUSION

Based on the foregoing reasons, the Court should grant defendant's motion for partial summary judgment and deny plaintiff's motion for summary judgment with respect to the Dial Access service.

Respectfully submitted,

November 8, 2006
Date

s/G. Robson Stewart
G. ROBSON STEWART
Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6493

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief
Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

November 8, 2006
Date

s/Steven I. Frahm
Of Counsel