IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NO. 03-2754T
(JUDGE WHEELER)

XO COMMUNICATIONS, INC.,

Plaintiff

V.

THE UNITED STATES,

Defendant

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF,
ON INTERNAL REVENUE SERVICE'S TAXATION OF INTERNET ACCESS AND RELATED INTERNET COMMUNICATIONS,
IN SUPPORT OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The Plaintiff, XO Communications, Inc., (hereinafter "XO Communications"), through their Attorney Anthony C. Gulotta, in response to the Court's Order Requesting Supplemental Briefs, dated October 11, 2006, submits this supplemental brief on the extent to which the Internal Revenue Service ("IRS") currently imposes a tax on Internet access and related Internet communications.

The summary of the material facts and the legal basis, including cites, in support of the Plaintiff's motion for summary judgment, as fully explained in briefs previously

submitted to the Court, are incorporated by reference herein. This brief addresses the Court's request for supplemental briefs dated October 11, 2006. In that Order the Court requested that the parties address:

> "the extent to which the Internal Revenue Service ("IRS") currently imposes a tax on internet access and related internet communications. The Court is interested in knowing whether the IRS has any policy regarding taxation of internet communications, and whether such taxes have been approved upon legal challenge. The parties also may provide any legal treatises or articles[1] relating to taxation of the internet communications."

[1] XO Communications was able to find several articles on taxation of the Internet, however, all of those legal articles dealt with the States' taxation, not the Federal governments. See *The Internet Tax Debate: Promoting the Democratic Potential of the Internet in an Environment of Convergence and Broadband Access*, Center for Democracy & Technology, March 8, 2004 (discussing the benefits of an Internet tax moratorium banning new taxation by States on Internet access); Anita Horn, *Internet Transaction Taxes: The Need for Jurisdictional Integration*, 9 CommLaw Conspectus 29 (2001) (discussing confusion surrounding the tax policy debate regarding Internet taxation imposed by States); Timothy Fallow, *The Internet Tax Freedom Act: Necessary Protection or Deferral of the Problem*, 7 J. Intell. Prop. L. 161 (1999) (discussing the major provisions of the Internet Tax Freedom Act and the state and local interest objections to predicted effects of the legislation); Kevin J. Smith, *Internet Taxes: Congressional Efforts to Control States' Ability to Tax the World Wide Web*, 7 Rich. J.L. & Tech. 3 (2000) (discussing the Internet Tax Freedom Act, its longevity and the nexus theory).

# TABLE OF AUTHORITIES

## STATUTES

26 U.S.C. §4251 .....5, 6, 9, 10, 13

26 U.S.C. §4252 .....6, 7, 9, 10, 12, 13

26 U.S.C. §4252(a) .....8

26 U.S.C. §4252(b). .....6, 7

26 U.S.C. §4252 (c) .....6

47 U.S.C. §151 .....11, 12

## CASES

Concentric Network Corp. (now fully merged into XO Communications, Inc.), NY Div of Tax Appeals, Tax Appeals Tribunal, DTA No 819533, March 16, 2006 .....7

Concentric Network Corp. (now fully merged into XO Communications, Inc.) v. Commonwealth of Pennsylvania, 897 A.2d 6 (Pa. Commw. Ct. en banc 2006) (President Judge Dissenting), appeal pending Concentric Network Corp. v. Commonwealth of Pennsylvania, No. 65 MAP 2006 (PA) .....12

National Cable & Telecommunications Associations v. United States v. Brand X Internet Services, 125 S.Ct. 2688 (US 2005) .....8

## MISCELLANEOUS

Anita Horn, *Internet Transaction Taxes: The Need for Jurisdictional Integration*, 9 CommLaw Conspectus 29 (2001) .....2

*The Internet Tax Debate: Promoting the Democratic Potential of the Internet in an Environment of Convergence and Broadband Access*, Center for Democracy & Technology, March 8, 2004 .....2

Kevin J. Smith, *Internet Taxes: Congressional Efforts to Control States' Ability to Tax the World Wide Web*, 7 Rich. J.L. & Tech. 3 (2000) .....2

H. 786, Tax-Free Internet Act of 1997 .....10

H.R. 1898, Telephone Excise Tax Repeal Act of 2005 .....12

I.R.B. 04-29 (July 19, 2004)..........................................................................9

I.R.B. 06-25 (June 19, 2006)..........................................................................7

*Options to Improve Tax Compliance and Reform Tax Expenditures*,
Joint Committee On Taxation, U.S. Congress, January 27, 2005..........3, 6, 9, 12

S. 758, Federal Internet Tax Prohibition Act of 2005........................................12

S. 1321, Telephone Excise Tax Repeal Act of 2005.........................................12

S. Rep. No. 109-336, Telephone Excise Tax Repeal and Taxpayer
Protection Assistance Act of 2006.....................................................12

Timothy Fallow, *The Internet Tax Freedom Act: Necessary Protection or
Deferral of the Problem*, 7 J. Intell. Prop. L. 161 (1999)............................2

Thomas. The Library of Congress. <http://thomas.loc.gov>...............................12

## ISSUE

Is XO Communications, Inc. entitled to a refund of Federal Excise Tax imposed under Internal Revenue Code (IRC) Section 4251 on their purchase of lines used to provide Internet Access, given the IRS does not impose the excise tax on Internet access and related Internet communications?

## DISCUSSION

The Internal Revenue Service does not impose the Federal Excise Tax on Internet access and related Internet communications, which further supports XO Communications, Inc.'s position that their purchase of lines necessary to provide Internet access should not be subject to the excise tax imposed under IRC Section 4251.

This Brief is limited to specifically addressing the Court's request for a supplemental brief as noted above. XO Communications asserts that the answers to the Court's questions further support their Motion for Summary Judgment in this matter. The Internal Revenue Service has not specifically issued policy regarding taxation of Internet communications, however, a careful review of the regulatory and legislative landscape, as well as legislative initiatives, make it clear that the IRS has not subjected Internet access or related Internet communications to the Federal excise tax on communications, either in the past or presently.

**A. A plain reading of the Internal Revenue Code reveals that Internet access and Internet communications are not within the scope of the Federal excise tax on communications.**

IRC Section 4251 specifically imposes a tax on amounts paid for "communication services." 26 U.S.C. §4251. "Communication services" are defined to include "local telephone service," "toll telephone service" and "teletypewriter exchange service." 26 U.S.C. §4252. Teletypewriter exchange service in no way encompasses Internet access. See 26 U.S.C. §4252 (c) (the section requires access to a teletypewriter exchange system to fit within this definition); See "Options to Improve Tax Compliance and Reform Tax Expenditures," Joint Committee on Taxation, U.S. Congress, January 27, 2005, page 368, f.n. 819 (stating "it is understood that the system to which the definition was initially intended to apply is no longer in use....") (relevant parts attached hereto as Exhibit 1).

The Internal Revenue Service recently announced, based on a string of holdings in Federal Courts across the Nation, that "long distance service" is no longer subject to the excise tax imposed under §4251. Internal Revenue Bulletin: 2006-25, dated June 19, 2006, §3 (defining **nontaxable** services as including bundled service and long distance service) (attached hereto as Exhibit 2). The bulletin defines "long distance service" as "telephonic quality communication with persons whose telephones are outside the local telephone system of the caller." Id. at §3(c). "Toll telephone service" is defined by §4252(b) as

"telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication...." 26 U.S.C. §4252(b).

The excise tax on "toll telephone service" was intended to tax long distance service, while the tax on "local telephone service" was intended to tax the privilege of access to the local exchange. See Notice 2006-50 (setting forth the definitions of Section 4252 and then establishing two distinct categories "local-only service" and "long distance service.") Since "toll telephone service" is included within the scope of "long distance service," toll telephone service is no longer taxable, and, if the IRS were to otherwise categorize Internet access as long distance[2] it would, therefore, not be a taxable service. The only question that must be answered for the Court, therefore, is whether or not Internet access is taxed as "local telephone service."

The Internal Revenue Service does not tax Internet access as "local telephone service." "Local telephone service" is defined as

"the access **to a local telephone system**, and the privilege of telephonic quality communication with substantially all persons having telephone or

[2] In a recent NYS decision, XO Communications, was granted a refund of New York Sales and Use tax on the lines at issue in the present matter. The court reasoned that although the PRI lines (referred to in the case as "dial access") were intrastate (local access or transmission within NYS), the Internet itself was interstate and "any intrastate aspect of access to the internet is merely random and incidental to an interstate and international service." Concentric Network Corp. (now fully merged into XO Communications, Inc.), NY Div of Tax Appeals, Tax Appeals Tribunal, DTA No 819533, March 16, 2006, Pg 10 (this decision is final and not subject to appeal). The logic of that decision also applies here. The lines at issue do not give XO the privilege of access to the local telephone system, but rather because of their limitation to inward dial only service, give XO Communications' customers access to the Internet, an interstate (long distance) network. XO cannot access the local telephone system on these lines.

radio telephone stations constituting a part of such local telephone system…." 26 U.S.C. §4252(a) (emphasis added).

"Internet access" is recognized as access to "the network of interconnected computers that make up the Internet." National Cable & Telecommunications Associations v. United States v. Brand X Internet Services, 125 S.Ct. 2688, 2695 (US 2005) (holding that cable broadband Internet access was not a regulated telecommunication, but instead was an information service, also known as Internet access, not subject to mandatory common carrier regulations under the Telecommunications Act of 1996). Internet access provides the consumer with access to the Internet network and "offers consumers the ability to translate raw Internet data into information they may both view on their personal computers and transmit to other computers connected to the Internet." Id. at 2695-96. Although a dial up customer uses the local telephone system to dial into the Internet network, Internet access itself is access to the network of interconnected computers, not access to other telephones in the local telephone system. See Id. Since Internet access does not give the user "access to the local telephone system" it does not give the consumer the necessary privilege of telephonic quality communications with substantially all parties having telephones in the local telephone system necessary to bring the service within the scope of "local telephone service". XO Communications could find no instances where the IRS attempted to apply the Federal excise tax, or any other tax for that matter, to Internet access or Internet communications.[3]

[3] The IRS was only faced with an ISP purchasing PRI lines and using those lines to provide Internet access in one instance. In that case, Private Letter Ruling 2001-33008, the Service found that the PRI lines

In addition to a plain reading of Section 4252, we can also examine the IRS's recent proposed rule making, and the legislature's response, to further solidify the assertion that Internet access is not within the definition of "local telephone service." Congress's guidance in the Internet Tax Freedom Act, as well as Congress's Joint Committee on Taxation report on "Options to Improve Tax Compliance and Reform Tax Expenditures" are also instructive.

**B. The IRS's proposed rule making makes it clear that the IRS is struggling with the taxability of emerging technologies and is presently not taxing Internet access.**

In 2004 the Internal Revenue Service provided advance notice on proposed rulemaking concerning the communication services excise tax. Internal Revenue Bulletin: 2004-29, July 19, 2004 (attached hereto as Exhibit 4). The IRS notes in this document that "since 1965, numerous communications services have been developed and marketed, the methods of transmission have expanded, and the industry has been deregulated." Id. Furthermore, they noted that the "existing Treasury regulations do not reflect the 1965 statutory change." Id. Clearly, they do not, therefore, recognize technologies such as digital PRI lines (dial up access) and Internet access. See Id. The IRS also acknowledges "as a result of these changes, questions have arisen concerning the application of section

---

purchased by an ISP and used to provide Internet access were not subject to the Federal Excise Tax. A copy of this decision is attached as Exhibit 3. The fact that the IRS found in favor of the taxpayer clearly demonstrates that even the IRS is unclear on how to apply the "local telephone service" definition when faced with PRI lines purchased by an ISP. Private Letter Ruling 2001-33008 was published in the year 2001 and at that time the IRS had the benefit of all the Revenue Rulings and cases that they would have this Court rely on today to reach an alternative decision. Although in no way cited as precedence, this Letter Ruling does support the Taxpayer's position that there is reasonable doubt that these PRI lines should be subject to the communication excise tax. This Letter Ruling was revoked without explanation in 2002.

4251 to certain communications services that were not available in 1965." Id. As a result the IRS notes that Treasury and the IRS were "considering proposing regulations that would revise the existing regulations to reflect changes in technology.[4]" Id. Furthermore, in an effort to clarify and reflect the state of the new technology in the appropriate regulations they requested "suggestions describing the various technologies, services, and methods of transmission currently available for transmitting data and voice communications and how they should be treated under section 4251." Id. It is clear, based on this notice of proposed rulemaking, that the IRS's regulations do not include any new technologies that were developed since 1965, such as digital PRI lines (dial up access) and Internet access. Perhaps more revealing is the clear indication by the IRS that these technologies are not included in the present scope of Section 4251 and their intention to try to clarify the Regulations to bring some of the technologies within the scope of the tax. To date, no new regulations have been introduced. See 26 CFR 49.4252-1 to 4252-7 (among other obviously outdated provisions, discussing "general telephone service," which was eliminated in 1965 and replaced in IRC Section 4252 with "local telephone service").

**C. Congress has clearly not intended Internet access or Internet communications to be subject to taxation under IRC Section 4251.**

With the expanding availability of Internet access in the 1990's, Congress recognized the potential impact of subjecting the Internet to taxation. See H786 (House of

[4] Interestingly, the Joint Committee on Taxation expressed "significant doubt, however, whether the IRS and Treasury have the statutory authority to resolve many of the issues currently arising under those rules." "Options to Improve Tax Compliance and Reform Tax Expenditures," at 377, f.n. 843.

Representatives, March 06, 1997, comments of Congressman Weldon in the Congressional Record – attached hereto as Exhibit 5). Congressman Weldon clearly noted as he introduced the Tax-Free Internet Act of 1997 that although online services were not presently subject to Federal taxation, he wanted to prevent future attempts to impose a Federal tax. Although that legislation was not enacted, the Internet Tax Freedom Act passed the following year contained a specific prohibition against future Federal taxation of the Internet. 47 USC §151, note (Moratorium on Internet Taxes, restating the law in its entirety, with the prohibition against Federal Tax in Section 1201). The Act was recently extended through 2007. 47 U.S.C. §151, note (amendment known as the Internet Tax Nondiscrimination Act). The prohibition against Federal tax specifically states:

> "It is the sense of Congress that no new Federal taxes similar to the taxes described in section 1101(a) should be enacted with respect to the Internet and Internet access during the moratorium provided in such section." Id. at note §1201.

The taxes described in section 1101(a) include: "(1) Taxes on Internet access," with "Internet access" defined under the amendment to the Act as:

> "The term 'Internet access' means a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to propriety content, information, and other services as part of a package of services offered to users. The term 'Internet access' does not include telecommunications services, **except to the extent such services are**

**purchased, used, or sold by a provider of Internet access to provide Internet access.**" 47 U.S.C. §151, note at §1104(5) (emphasis added).

It is clear that Congress intended that Internet access not be subject to new Federal taxation. It is also clear, since Internet access was not subject to the Federal excise tax at the time that the Act was originally imposed, and Congress included telecommunication lines within the scope of the definition of Internet access when used to provide Internet access by an ISP, the lines at issue in this case should not be subject to Federal tax.[5]

In 2005, when the Joint Committee on Taxation examined subjecting Internet access and other new technologies to taxation under IRC Section 4252, Congress once again stepped in. See "Options to Improve Tax Compliance and Reform Tax Expenditures," January 27, 2005, pages 368-378 (Joint Committee on Taxation) (applicable excerpts attached hereto as Exhibit 4); S. 758 (109th Congress 2005) (legislation introduced by Congressman Allen "to ensure that the federal excise tax on communication services does not apply to internet access service," discussed more fully in XO Communications brief dated August 31, 2005).[6] Interestingly, this legislation proposed adopting the definition

[5] The Government will no doubt argue that the Court should not hold that the Internet Tax Freedom Act was a prohibition against the application of Section 4251 on PRI lines used to provide Internet access because the act was imposed in 1965, prior to the Internet Tax Freedom Act. A similar position was taken by the Commonwealth of Pennsylvania in Concentric Networks, Inc. (now fully merged into XO Communications, Inc.) v. Commonwealth of Pennsylvania, 897 A.2d 6 (Pa. Commw. Ct. en banc 2006) (President Judge Dissenting), appeal pending Concentric Network Corp. v. Commonwealth of Pennsylvania, No. 65 MAP 2006(PA). However, unlike the Pennsylvania regulations published in 1997 just prior to the passage of the Internet Tax Freedom Act, that placed ISPs on notice in Pennsylvania that certain telecommunication lines used to deliver Internet access were taxable, the IRS has not published any regulatory guidance since the Communication Excise Tax was revised in 1965. In addition, this case is still pending before the Supreme Court of Pennsylvania.

[6] There are presently other Bills pending that would eliminate the Federal excise tax on communications. HR 1898, which would repeal the excise tax altogether was discussed in XO Communications August 31, 2005 supplemental brief. Since that time the Senate has also introduced S 1321. This Act, if enacted, would repeal the communications excise tax and fund the IRS's efforts to process refunds for the "toll telephone" issue discussed in Internal Revenue Bulletin: 2006-25. The Bill is discussed in more detail in

of "internet access service" contained in the Internet Tax Freedom Act, which would also include the PRI lines (dial access) at issue in the present matter. See S.758; 47 U.S.C. 151 note (Internet Tax Freedom Act). Perhaps just as interesting, however, is the Joint Committee on Taxation's recognition that amendments would be needed to IRC 4252 to bring information service (Internet access) into the scope of taxable services. See "Options to Improve Tax Compliance and Reform Tax Expenditures," page 373-375 (discussing Option 1, which contemplated no changes to the tax, and noting information services (Internet access) as "nontaxable", compare with Option 3, which would expand the tax to include, among other items, Internet access service).

Clearly, based on legislation passed by Congress and the report prepared by the Joint Committee on Taxation, Internet access is presently not subject to taxation under IRC Section 4252 and the definition adopted by Congress includes, within the definition of Internet access, the PRI lines (dial access) at issue in the present matter.

## CONCLUSION

Based on the foregoing, it is clear that Internet access is presently not taxable under §4251 and Congress' broad definition of Internet access includes the lines that are presently at issue in this matter.

---

Senate Report Number 109-336. The bill was placed on the Senate's Legislative Calendar under General Orders on September 15, 2006. http://thomas.loc.gov.

Based on the arguments contained in XO Communication's previous briefs; the Government's failure to clearly show how the dial up access at issue in the present case is within the scope of Section 4252(a); the IRS's clear confusion over this issue as evidenced by Private Letter Ruling 2001-33008, Notice 2006-50 and Notice of Proposed Regulation (I.R.B. 04-61), as well as the lack of regulatory guidance published in the last forty years; the Internet Tax Freedom Act; the findings of the Joint Committee on Taxation and; other legislative initiatives, there is serious doubt as to the taxability of the "dial up access" at issue in the present case. As a matter of law, that doubt must be resolved in favor of XO Communications and their refund should be granted.

For all the above stated reasons, and as more fully explained in prior briefs submitted by the Plaintiff, the Plaintiff asks this honorable Court to deny the Defendant's motion for summary judgment and to grant the Plaintiff's motion for summary judgment on their claims under the Rules of The United States Court of Federal Claims (RCFC) Rule 56.

Respectfully submitted,

[signature] 11/10/06

Anthony C. Gulotta, Esq.
I.D. # 82081 (Pennsylvania)
Anderson & Gulotta, P.C.
Attorney for Plaintiff
1110 North Mountain Road
Harrisburg, PA 17112
(717) 635-7144
Fax (717) 541-5434
tgulotta@fbstax.com

# OPTIONS TO IMPROVE TAX COMPLIANCE AND REFORM TAX EXPENDITURES

PREPARED BY THE STAFF

OF THE

JOINT COMMITTEE ON TAXATION

January 27, 2005

JCS-02-05

tabbies®
PLAINTIFF'S EXHIBIT
1

## Contents

Page

INTRODUCTION AND SUMMARY ........ 1

GRASSLEY-BAUCUS REQUEST LETTER ........ 3

I. TAX PROCEDURE AND ADMINISTRATION ........ 4

A. Impose Withholding on Certain Payments Made by Government Entities ........ 4
B. Require Partial Payments with Submission of Offers-in-Compromise ........ 10
C. Clarify Standards of Scrutiny for Certain Transactions with Characteristics of Tax Shelters ........ 14

II. INDIVIDUAL INCOME TAX ........ 31

A. Provide Uniform Treatment for Dependent Care Benefits (secs. 21 and 129) ........ 31
B. Combine Hope and Lifetime Learning Credits and the Above-the-Line Deduction for Higher Education Expenses (secs. 25A and 222) ........ 35
C. Repeal Exclusion for Qualified Tuition Reductions (sec. 117(d)) ........ 44
D. Deny Refundable Child Credit When Section 911 Exclusion is Elected (sec. 24) ........ 47
E. Repeal the Deduction for Interest on Home Equity Indebtedness (sec. 163) ........ 52
F. Limit the Exclusion for Rental Value of a Residence Rented for Fewer Than 15 Days (sec. 280A) ........ 57
G. Extend Pro-Rata Basis Allocation Requirement to All Part-Gift, Part-Sale Transactions (sec. 1011) ........ 59
H. Simplify Taxation of Minor Children (sec. 1) ........ 62

III. EMPLOYMENT TAXES ........ 71

A. Provide Consistent FICA Treatment of Salary Reduction Amounts (sec. 3121(a)) ........ 71
B. Conform Calculation of FICA Taxes and SECA Taxes (sec. 1402(a)(12)) ........ 74
C. Extend Medicare Payroll Tax to All State and Local Government Employees (sec. 3121(u)(2)) ........ 80
D. Modify FICA Tax Exception for Students (secs. 3121(b)(10) and 3306(c)(10)) ........ 83
E. Apply Employment Taxes to Sales Incentive Payments Made by Manufacturers (secs. 3121, 3306, and 3401) ........ 91
F. Modify Determination of Amounts Subject to Employment or Self-Employment Tax for Partners and S Corporation Shareholders (sec. 1402) ........ 95

IV. PENSIONS AND EMPLOYEE BENEFITS ........ 105

A. Conform Definition of Qualified Medical Expenses (secs. 105, 106, 213, 220, and 223) ........ 105
B. Limit Deduction for Personal Use of Company Aircraft and Other Entertainment Expenses (sec. 274(e)) ........ 109

Page


C. Limit Deduction for Income Attributable to Property Transferred in Connection with the Performance of Services to Amount Included in Income by the Service Provider (sec. 83) ........ 113

D. Payments in Redemption of Stock Held by an ESOP Not Deductible as Dividends (sec. 404(k)) ........ 117

E. Provide Greater Conformity for Section 403(b) and Section 401(k) Plans (secs. 402(g), 403(b), and 415(c)(3)) ........ 122

F. Extend Early Withdrawal Tax to Eligible Deferred Compensation Plans of State and Local Governments (sec. 72(t)) ........ 130

G. Modify Prohibited Transaction Rules for Individual Retirement Arrangements ("IRAs") to Reduce Tax Shelter Transactions (sec. 4975) ........ 133

H. Repeal Pick-Up Rules for Employee Contributions to State or Local Governmental Retirement Plans (sec. 414(h)) ........ 140

V. CORPORATE AND PARTNERSHIP PROVISIONS ........ 145

A. Modify Extraordinary Dividend Rules for Common Stock (sec. 1059) ........ 145

B. Reduce Tax-Indifferent Shareholder's Basis in Stock by Nontaxed Portion of Extraordinary Dividend (sec. 1059) ........ 148

C. Modify Active Business and Control Requirements for Section 355 Corporate Divisions (sec. 355) ........ 153

D. Modify Application of Unrelated Business Income Tax to S Corporation Shareholders (sec. 512) ........ 159

E. Modify Safe Harbor for Allocation of Nonrecourse Deductions and Exclude Nonrecourse Liabilities From Outside Basis (secs. 704 and 752) ........ 161

F. Modify Adjustment Rules for Basis of Undistributed Partnership Property (sec. 734) ........ 168

G. Treat Guaranteed Payments to Partners as Payments to Nonpartners (sec. 707) ........ 170

VI. INTERNATIONAL PROVISIONS ........ 174

A. Amend the Employer-Provided Housing Exclusion and Impose a Stacking Rule with Respect to Non-Excludable Income (sec. 911) ........ 174

B. Amend Rules for Determining Corporate Residency (sec. 7701) ........ 178

C. Modify Entity Classification Rules to Reduce Opportunities for Tax Avoidance (sec. 7701) ........ 182

D. Adopt a Dividend Exemption System for Foreign Business Income ........ 186

VII. OTHER BUSINESS PROVISIONS ........ 198

A. Disallow Deduction for Interest on Indebtedness Allocable to Tax-Exempt Obligations (sec. 265) ........ 198

B. Modify Recapture of Section 197 Amortization (sec. 1245) ........ 204

C. Modify Application of Income Forecast Method of Depreciation (sec. 167) ........ 207

D. Apply Luxury Automobile Limitations to Sport Utility Vehicles (sec. 280F) ........ 210

E. Disallow Deduction for Interest on Debt Allocable to Tax-Exempt Income of Insurance Companies (secs. 265 and 832) ........ 214

Page

F. Eliminate Double Deduction of Mining Exploration and Development Costs Under the Minimum Tax (sec. 57) ..... 218

VIII. EXEMPT ORGANIZATIONS ..... 220

A. Require Five-Year Review of Exempt Status of Public Charities and Private Foundations and Annual Notice by Organizations Not Required to File Information Returns (sec. 508) ..... 220
B. Impose Termination Tax on Conversions of Assets of Charities (secs. 501, 507, 4941, and 4958) ..... 230
C. Tax Involvement by Exempt Organizations in Tax-Shelter Transactions (secs. 6011 and 6707A) ..... 247
D. Reform Intermediate Sanctions and Extend Certain Reforms to Private Foundations (secs. 4941 and 4958) ..... 254
E. Increase the Amount of Excise Taxes Imposed on Public Charities, Social Welfare Organizations, and Private Foundations (secs. 4941, 4942, 4943, 4944, 4945, and 4958) ..... 270
F. Modify Charitable Deduction for Contributions of Conservation and Facade Easements (sec. 170) ..... 277
G. Limit Charitable Deduction for Contributions of Clothing and Household Items (sec. 170) ..... 288
H. Reform Rules for Charitable Contributions of Property (sec. 170) ..... 293
I. Require Public Disclosure of Form 990-T and Related Certification Requirements (secs. 6104 and 6685) ..... 308
J. Expand the Base of the Tax on Private Foundation Net Investment Income (sec. 4940) ..... 313
K. Limit Tax-Exempt Status of Fraternal Beneficiary Societies that Provide Commercial-Type Insurance (sec. 501(c)(8)) ..... 319
L. Establish Additional Exemption Standards for Credit Counseling Organizations (secs. 501(c)(3) and 501(c)(4)) ..... 327

IX. TAX-EXEMPT BOND PROVISIONS ..... 338

A. Impose Loan and Redemption Requirements on Pooled Financing Bonds (sec. 149) ..... 338
B. Amend Information Reporting Requirements to Include Interest on Tax-Exempt Bonds (sec. 6049) ..... 346
C. Clarify Limitations on Indian Tribes' Use of Tax-Exempt Bond Proceeds (sec. 7871) ..... 350
D. Eliminate Private Payment Test for Stadium Bonds (sec. 141) ..... 353
E. Require Allocation of Volume Cap to Mortgage Credit Certificates Based on Allocation of Volume Cap to Mortgage Bonds (secs. 25 and 143) ..... 359
F. Eliminate Advance Refunding of Governmental Bonds and 501(c)(3) Bonds (sec. 149(d)) ..... 365

X. EXCISE TAXES ..... 368

A. Modify the Federal Excise Tax on Communications Services (secs. 4251-4254) ..... 368

Page

B. Equalize Alcohol Excise Taxes (secs. 5001, 5041, and 5051) .......................................... 379
C. Subject International Flights with Wholly Domestic Segments to the Segments Tax (secs. 4261 and 4262) .......................................... 385
D. Modify the Federal Excise Tax on Sport Fishing Equipment (secs. 4161 and 4162) .... 388

XI. ESTATE AND GIFT TAXATION .......................................... 392

A. Limit Perpetual Dynasty Trusts (secs. 2631 and 2632) .......................................... 392
B. Determine Certain Valuation Discounts More Accurately for Federal Estate and Gift Tax Purposes (secs. 2031, 2512, and 2624) .......................................... 396
C. Curtail the Use of Lapsing Trust Powers to Inflate the Gift Tax Annual Exclusion Amount (sec. 2503) .......................................... 405
D. Provide Reporting for a Consistent Basis Between the Estate Tax Valuation and the Basis in the Hands of the Heir (sec. 1014) .......................................... 409
E. Modify Transfer Tax Provisions Applicable to Section 529 Qualified Tuition Accounts (sec. 529) .......................................... 412

XII. ESTIMATED REVENUE EFFECTS OF PROPOSALS .......................................... 425

# X. EXCISE TAXES

## A. Modify the Federal Excise Tax on Communications Services (secs. 4251-4254)

### Present Law

**In general**

A three-percent Federal excise tax is imposed on amounts paid for communications services (sec. 4251). Communications services are defined as "local telephone service," "toll telephone service," and "teletypewriter exchange service."[819] The person paying for the service (i.e., the consumer) is liable for payment of the tax. Service providers are required to collect the tax; however, if a consumer refuses to pay, the service provider is not liable for the tax and is not subject to penalty for failure to collect if reasonable efforts to collect have been made. Instead, the service provider must report the delinquent consumer's name and address to the IRS, which then must attempt to collect the tax.[820]

Local telephone service is defined as the provision of voice-quality telephone access to a local telephone system that provides access to substantially all persons having telephone stations constituting a part of the local system.[821]

Toll telephone service is defined as voice quality communication for which (1) there is a toll charge that varies with the distance and elapsed transmission time of each individual call and payment for which occurs in the United States, or (2) a service (such as a wide area telephone service, or "WATS") which, for a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), entitles the subscriber to an unlimited number of telephone calls to or from an area outside the subscriber's local system area.

Special rules, enacted in 1997, apply to the sale of "prepaid telephone cards." These cards are subject to tax when a telecommunications carrier sells them to a non-

[819] "Teletypewriter exchange service" refers to a data system that provides access from a teletypewriter or other data station to a teletypewriter exchange system and the privilege of intercommunication by that station with substantially all persons having teletypewriter or other data stations in the same exchange system. While it is understood that the system to which the definition was initially intended to apply is no longer in use, the definition may fit other services provided now or that may be provided in the future.

[820] In general, the amount of tax is based on the sum of charges for taxable services included in the bill. If the person who renders the bill groups individual items for purposes of rendering the bill and computing the tax, then the tax base with respect to each such group is the sum of all items within that group. The tax on any remaining items not included in any such group is based on the charge for each item separately.

[821] The access to substantially all persons having telephone stations constituting a part of the local system is sometimes referred to as access to the public switched telephone network.

telecommunications carrier (rather than when communication services are provided to the consumer). The base to which the tax is applied is the face amount of the card.

**Exemptions**

Present law provides for the following exemptions:

- Public coin-operated service from the tax on local telephone service, and to the extent that the charge is less than 25 cents, from the toll telephone service tax.[822]
- Service for the collection of news by the public press, news ticker, or radio broadcasting services (providing a news service as part of or similar to that of the public press), from the toll telephone service tax. (Local telephone service provided to the press is subject to tax.)
- Private communication service for which a separate charge is made, from the local telephone service tax.[823]
- Service provided to international organizations and the American National Red Cross.
- Toll telephone service provided to members of the Armed Services who are stationed in combat zones.
- Certain toll telephone service to common carriers (i.e., public transportation companies), telephone or telegraph companies, or radio broadcasting stations or networks in the conduct of these businesses.
- Installation charges (including wires, poles, switchboards, or other equipment).
- Telephone service provided to non-profit hospitals.
- Telephone service provided to State and local governments.

---

[822] If coin-operated toll service is taxable, the tax is computed to the nearest multiple of five cents.

[823] Private communication service is defined as: (1) service that entitles the customer to exclusive or priority use of a communication channel or group of channels, or an intercommunication system for the customer's stations; (2) switching capacity, extension lines and stations, or other associated services provided in connection with services described in (1); and (3) channel mileage connecting a telephone outside a local service area with a central office in the local area.

Unlike the other exemptions, the special treatment for private communication service is accomplished by means of an exclusion from the definition of local telephone service rather than as a stated exemption.

- Telephone service provided to nonprofit educational organizations.
- Telephone service provided to the government of the United States.

**Private communications services exclusion**

The exclusion for private communications services was added by the Excise Tax Reduction Act of 1965 in order to equalize the tax treatment of internal local communications systems, such as a private branch exchange system, purchased by businesses, and similar services leased to businesses by telephone companies. Prior to 1965, leased systems were subject to tax if they could access a local telephone exchange, whereas purchased systems were not taxed. Equalization of treatment was achieved by exempting leased systems from tax. Equipment purchased by businesses for long distance internal communications is free of tax, just as local systems are.

**Toll telephone service controversy**

As stated above, toll telephone service is defined as voice quality communication for which (1) there is a toll charge that varies with the distance and elapsed transmission time of each individual call and payment for which occurs in the United States, or (2) a service (such as a wide area telephone service, or "WATS") which, for a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), entitles the subscriber to an unlimited number of telephone calls to or from an area outside the subscriber's local system area.

In a series of recent cases, the IRS has had only limited success in sustaining the tax on toll telephone services where the charges for such services are assessed on an individual call basis and do not vary in amount with both elapsed transmission time and distance.[824] The conjunctive (time and distance) requirement of present law is not literally met by charges for toll telephone services that vary solely by elapsed transmission time. On August 9, 2004, the IRS issued Notice 2004-57 confirming that it "will continue to assess and collect the tax under section 4251 on all taxable communications services, including those communications services similar to those at issue in the cases."[825]

[824] Compare *Reese Brothers, Inc. v. United States*, No. 03-745 (W.D. Pa. Nov. 30, 2004); *National Railroad Passenger Corp. v. United States*, 2004 U.S. Dist. LEXIS 18907 (D.D.C. Sept. 20, 2004); *Fortis, Inc. v. United States*, 2004 U.S. Dist. LEXIS 18686 (S.D.N.Y. Sept. 16, 2004); and *Office Max, Inc. v. United States*, 309 F. Supp. 984 (N.D. Ohio 2004), *appeal docketed*, No. 04-4009 (6th Cir. Aug. 19, 2004) *with American Bankers Insurance Group v. United States*, 308 F. Supp. 1360 (S.D. Fla. 2004) (reading "and" disjunctively as "or" in the definition of toll telephone service), *appeal docketed*, No. 04-10720-EE (11th Cir. February 12, 2004); and Rev. Rul. 79-404, 1979-2 C.B. 382 (finding that a service qualifies as toll telephone service even though the charge for calls between remote maritime stations and stations in the United States vary with elapsed transmission time only).

[825] Notice 2004-57, 2004-35 I.R.B. 376. The Notice also stated that persons (taxpayers) paying for taxable communications services are required to pay the tax to a collecting agent (i.e.,

**Overview of history of the Federal communications excise tax**

The first Federal excise tax on telephone service was enacted in 1898 to help finance the Spanish-American War. That tax was repealed in 1902 and was not re-enacted until World War I required additional revenues. The World War I telephone tax was repealed in 1924 and was re-enacted in 1932. All of these initial telephone taxes applied only to toll (long distance) service. In 1941, prior to the advent of World War II, the tax was extended to general local service.

A Federal excise tax on telephone service has been in effect in every year since 1941, despite enactment of periodic legislation to repeal or phase out the tax. In the Excise Tax Reduction Act of 1965, Congress scheduled a phase-out, beginning with a reduction in the then 10-percent rate[826] for both local and toll service to three percent after 1965. Additional reductions of one percentage point per year were scheduled thereafter until there would have been no tax effective on January 1, 1969. However, the scheduled reductions were repealed in 1966 (effective April 1, 1966), and the 10-percent rate was re-instated. A delayed phase-out schedule was enacted in 1968, to begin in 1970. This phase-out schedule also was postponed, with a one-percentage point per year phase-out finally going into effect on January 1, 1973.

In 1973, the tax rate declined from 10 percent to nine percent as the first step in this phase-out, which was to be completed beginning in 1982. However, the Omnibus Reconciliation Act of 1980 delayed the repeal by one year (until 1983); and the Economic Recovery Tax Act of 1981 further delayed repeal for two additional years. After reaching a rate of one percent, the rate was increased again to three percent in 1983, and after being extended at that rate several times, the three-percent rate was made permanent by the Revenue Reconciliation Act of 1990.

**Reasons for Change**

The present communications excise tax provisions were enacted before the development of most modern technology -- the growth of computers and new electronic means of communication. The proliferation of wireless communications technology and the Internet, and in particular broadband access, has blurred the lines between "data" and "voice" and between the functions of transmission and application.[827] Consequently, service providers have found it

---

the service provider). Taxpayers were directed to preserve any claims for overpayment by filing administrative refund claims with the IRS. In addition, the Treasury Department recently issued final, temporary, and proposed regulations relating to the obligations of persons that receive payments for communications services (or air transportation) subject to excise tax when persons liable for tax refuse to pay. T.D. 9149, 2004-38 I.R.B. 494; REG-163909-02, 2004-38 I.R.B. 499.

[826] At their highest, the tax rates were 15 percent on general local service and 25 percent on toll service costing more than 24 cents per message. These rates were in effect from 1944 until 1954.

[827] The complications resulting from these developments became evident during the recent legislative debates relating to the regulation and State and local taxation of Voice Over Internet Protocol (VOIP) services. See, e.g., VOIP Regulatory Freedom Act of 2004, S. 2281,

increasingly difficult to determine which services are taxable communications services and which are nontaxable information services.[828]

The basis for the toll (long distance) telephone tax has not kept up in many instances with the many ways that long distance services are charged today. For example, long distance calling plans may be purchased now by paying a fixed monthly fee for a limited (or even an unlimited) number of minutes usable nationwide. In addition, both local and long distance telephone services may be bundled together or with nontaxable services, including data (e.g., text messaging, or wireless internet).

The exclusion for private communication services has also been overtaken by new technologies and marketing practices. It is possible for larger businesses to purchase telephone equipment (including private lines or microwave relays in some cases) and thereby significantly reduce their communications costs by reducing their tax liability relative to the tax paid for similar services by smaller businesses and individuals who must contract with third parties for identical services. In addition, private communications systems or services partially or wholly excluded from the telephone tax can be used to facilitate long distance services.[829]

**Description of Proposal**

**In general**

The proposal is presented below as three options. Option 3 represents a more fundamental change to the tax than Option 2, which in turn represents a more fundamental

108th Cong., 2d Sess. (2004) (introduced April 5, 2004 with restriction on State and local taxation of VOIP applications; reported out of Committee on Commerce, Science, Transportation on November 19, 2004 without such restriction); Internet Tax Nondiscrimination Act, Pub. L. No. 108-435, amending Internet Tax Freedom Act, sec. 1108 (generally permitting taxation of voice services utilizing Internet protocol), codified as amended at 47 U.S.C. sec. 151 note (2004).

VOIP is the use of software, hardware, or network equipment for real-time two-way or multidirectional voice communications over the public Internet or a private network utilizing Internet protocol, or any successor protocol, in whole or in part, to connect users notwithstanding (i) the underlying transmission technology used to transmit the communications; (ii) whether the packetizing and depacketizing of the communications occurs at the customer premise or network level; or (iii) the software, hardware, or network equipment used to connect users. See VOIP Regulatory Freedom Act of 2004, H.R. 4129, 108th Cong., 2d Sess., sec. 10(a)(6) (2004).

828 For example, AT&T has claimed that adding an advertisement heard by users when they dial the main number to make a call using prepaid calling cards transforms the cards from a communications service subject to certain regulatory fees to an exempt information service. See *Wall Street Journal*, January 7, 2005, at A3.

829 See, e.g., Rev. Rul. 79-405, 1979-2 C.B. 383.

change than Option 1. Each of the options assumes that the current three-percent rate is applied to the relevant tax base.

**Option 1: Modify the definitions of toll and local telephone services**

Under this option, the communications excise tax is imposed upon both local and non-local (long distance) voice telephone services, regardless of whether the charges are fixed or vary with distance, elapsed transmission time, both, or some other criteria. Definitions are clarified to remove any distinction between the calculation of taxes on local and long distance telephone services, and to clarify that the tax is intended to apply to landline and wireless (including satellite) voice communications services.

Option 1 contemplates no additional changes to the communications excise tax provisions. No view is expressed regarding whether VOIP is a taxable communications service or a nontaxable information service.

**Option 2: Modernize the excise tax on voice communications services**

Option 2 incorporates the changes to the tax under Option 1 and makes further changes to the law. Under Option 2, a voice communications service is taxable regardless of its technical form. For example, the tax applies to voice communications services using landlines, analog and digital wireless, satellite and VOIP, or any combination. It is not necessary that the voice communications service provide the capability to access the public switched telephone network (required under present law) to be taxable.

In general, a service component is classified as a taxable communications service if the primary purpose of the service component is the transmission of real-time voice communications. The content of the communications or the capability for generating, acquiring storing, transforming, processing, retrieving, utilizing, or making information available via communications, is not a taxable communications service.[830] For example, a service in which a caller dials a "1-900" number for the purpose of receiving information is a nontaxable information service. However, the underlying telephone service provided to the information services provider by the communications provider is a taxable communications service.[831]

---

[830] This distinction is generally consistent with 47 U.S.C. 153 (20), which defines an information service as "the offering of a capability for generating, acquiring storing, transforming, processing, retrieving, utilizing, or making information available via telecommunications." However, Options 2 and 3 do not expressly adopt the operative distinctions between telecommunications services and information services that may currently exist in the regulatory world. In addition, Options 2 and 3 of this proposal implicitly recognize that real-time voice communications may be transformed into data form to facilitate some or all of its physical transmission, and then reconstituted as voice. Such intermediate transformation should not affect the incidence of excise taxation, which is a tax upon the service received.

[831] This treatment is consistent with present law. See Rev. Rul. 89-84, 1989-1 C.B. 296. The telephone service that generally enables the caller generally to place the "1-900" call (as well as other calls) is also a taxable communications service.

To avoid controversy, certain service components are expressly classified as taxable communications services: enhanced voice service features, such as conference calling, three-way calling, call forwarding, caller ID and voice mail services, as well as other ancillary services taxable under present law.[832] Directory listings (whether "white pages" or "yellow pages"), however, are classified as information services.[833] Provision of a "regular" phone line or circuit that may be used for facsimile, for teletypewriter, or for connection to a "dial-up" Internet access provider is treated as a taxable communications service unless the line or circuit cannot be used for real-time voice communications. Provision of broadband (where the amount for such service is separately itemized from VOIP) or dial-up Internet access service (where not connected to the public switched telephone network) is not taxable.

The billing and bundling rules generally remain as under present law. However, to be excluded or exempted from the communications excise tax, a nontaxable service component must be separately stated on the customer's bill. The Treasury Department is granted the regulatory authority to determine if the communications component of a service is de minimis, if an offered service constitutes a service component, and if a service component is a communications service or an information service.[834]

Option 2 modifies certain present-law exemptions. Present-law exemptions for the press, common carriers (e.g., trucking companies), and radio broadcasting stations and networks are expanded to cover all communications excise taxes (rather than only taxes on toll telephone services).[835] Separately itemized service components provided by one communications provider to another communications provider are exempt from excise tax to the extent that the recipient uses such services to provide services to its customers. The exemption for public coin-operated service is modified such that such calls are exempted to the extent of the minimum amount charged by the coin-phone service for a local call. The rest of the exemptions (except for private communications services) are unchanged.

---

[832] Voice mail services are generally classified as private communications services under present law. See Priv. Ltr. Rul. 9006014 (November 7, 1989). Such classification would not change under the proposal, to the extent such services are provided within the scope of the private communications services exemption, as modified under the proposal.

[833] White pages directory listings are classified as taxable local telephone services under present law. Yellow pages listings, however, are classified as nontaxable advertising. See Rev. Rul. 72-616, 1972-2 C.B. 575.

[834] For example, in the case of a private voice network bundled with a video game, the Treasury Department might determine that the access to the bundled private voice network is de minimis because access to a similar, but unbundled, private voice network is available at no charge.

[835] If Option 2 or 3 is enacted, it may be timely to revisit whether these and other exemptions are still warranted.

The private communication services exclusion is significantly modified. Under Option 2, the exclusion continues to apply as under present law, but is geographically limited to taxable communications either (a) within a Core Based Statistical Area,[836] or (b) within one building or between buildings located on a contiguous plot of land. Rules similar to the rules of the Mobile Communications Sourcing Act[837] are applicable to cross-border services.

**Option 3: Expand the tax base to all voice and data communications**

Option 3 incorporates the changes to the tax under Option 2 (including changes to the tax under Option 1) and makes further changes to the law. Under Option 3, the communications excise tax base is generally expanded to include all data communications services to end-users. The taxable base includes local and long distance voice services, VOIP, analog and digital cellular and satellite telephone services, cable and satellite television services (to the extent the charge is for communications), broadband and dial-up Internet access services, paging services, and other data communications services.

In general, a service component is classified as a communications service if the primary purpose of the service component is the transmission of communications, as contrasted with the content of the communications or the capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making information available via communications. The billing and bundling rules are similar to those of Option 2. For example, cable and satellite television is considered to consist of a taxable communications service component bundled with a nontaxable information (content) component.[838]

Unlike Option 2, communications capacity ("bandwidth") is taxable, whether provided, for example, as a service, as a lease, or as the sale of "lit" (activated) fiber optic cable or installed "dark" (inactivated) fiber.

---

[836] A Core Based Statistical Area is a geographical area containing a recognized population nucleus and adjacent communities that have a high degree of integration with that nucleus. See Office of Management and Budget, *Standards for Defining Metropolitan and Micropolitan Statistical Areas*, 65 Fed. Reg. 82,228 (2000). Lists of these areas are published periodically by the Office of Management and Budget, based on information from the Census Bureau.

[837] Pub. L. No. 106-252 (2000) (codified at 4 U.S.C. secs. 116-126). This legislation generally relates to the methodology for allocating and apportioning mobile communications revenue for purposes of State and local taxation.

[838] The communications component of cable and satellite television consists of the portion of the "basic" service provided by the taxpayer attributable to the communications, i.e., the capability to access the provider's content. Enhanced features, such as pay-per-view and "premium" channels, are not taxable services, but are, instead, incremental information services.

## Effective Date

Option 1 of the proposal is effective for services rendered after the date of enactment. Option 2 or 3 of the proposal is effective for services rendered on or after the first day of the first calendar quarter beginning 60 days after the date of enactment.

No inference is intended as to the treatment of any issues or controversies arising under present law.

## Discussion

### Overview

There is no compelling policy argument for imposing taxes on communications services. Indeed, in 1987 the Department of the Treasury recommended letting the tax expire.[839] Any excise tax distorts consumer decisions, and taxing new services and new technologies makes them more expensive, and, therefore, may slow their development.[840] The last significant revision of the tax occurred in 1965. Consequently, many of the rules are now so obsolete due to intervening developments in technology and marketing that, in many cases, they either fail to capture many services that traditionally were seen as within the scope of the communications tax or they capture those services unevenly.[841]

On the other hand, the excise tax on communications services raises a significant amount of revenue. According to the IRS, the communications excise tax raised approximately $5.8 billion in 2003.[842] Assuming that the communications excise tax continues in force, however,

[839] Office of Tax Analysis, U.S. Department of the Treasury, *Report to the Congress on Communication Services Not Subject to Federal Excise Tax* (1987). The specific mandate for the Report in section 8061 of Public Law 99-509, The Omnibus Budget Reconciliation Act of 1986, was to study the various exemptions of the communications excise tax, and to describe a method under which the tax could be extended to private communications services.

[840] Indeed, some have argued that the costs imposed on society by taxing telecommunications are quite large in terms of the distortion of choice. See, e.g., Jerry Hausman, "Taxation by Telecommunications Regulation," National Bureau of Economic Research, Working Paper No. 6260 (1997).

[841] The Joint Committee staff recommended repealing the tax in its 2001 Simplification Study. See Joint Committee on Taxation, *Study of the Overall State of the Federal Tax System and Recommendations for Simplification, Pursuant to Section 8022(3)(B) of the Internal Revenue Code of 1986*, (JCS-3-01), Vol. II at 504-506, April 2001. The primary reason for the recommendation was the obsolescence of the law due to technological changes. If the tax was not eliminated, the Study recommended updating the Code to reflect current technology and granting broad regulatory authority to the Treasury Department to allow it to continually update the tax base to reflect future technological changes.

[842] This was the total excise tax collected by, or reported to, the IRS in fiscal year 2003. See IRS, *Statistics of Income Bulletin* (Fall 2004), Vol. 24, No. 2, Table 21 at 345.

the policies of fairness and efficiency require that the tax apply as consistently as possible to similar services with as little administrative costs as possible.[843]

**Option 1**

This option involves making only limited changes to certain tax rules and is targeted to resolve a particular set of controversies that currently place the administration and collection of the communications tax on toll telephone service in substantial doubt. Option 1 will end the controversy regarding the dual requirements of elapsed transmission time and distance, and should eliminate other uncertainties regarding the application of the present-law definition of toll telephone services by more closely conforming such definition to the range of current industry billing practices. Option 1 does not address other current major issues, for example, issues relating to access to the local telephone system, private communications services, and the full or mixed use of new technologies such as VOIP. However, it might be possible to selectively address these or other discrete issues within the scope of an expanded Option 1, by adding selected features from Option 2.

Many of the arguments advanced by those who believe the tax should be repealed are also arguments against Option 1. Future controversies will almost certainly develop as technologies are developed and implemented and the market changes. Since these changes are occurring now, Option 1 is likely to be only a short-run measure.

**Option 2**

This option is based on the premise that the current communications tax on voice services can be adapted to the technology and the markets of the early 21st century. Option 2 attempts to resolve current controversies such as the time/distance controversy and the coverage of services provided through multiple technologies, including VOIP. In addition, the option recognizes that the broad exclusion for private communications services, the requirement of access to the local telephone system, and the application of certain exemptions solely to toll (long distance) services no longer operate efficiently and equitably in light of technical developments and the practical difficulties in distinguishing between local and long distance services.

At the same time, Option 2 does not tax data, Internet access, and bandwidth, and therefore does not "tax the Internet." In addition to the voice/data dichotomy, distinctions are drawn between communications services and information services. While such distinctions may generally parallel regulatory distinctions, they may not follow them in a particular case.

---

[843] In recognition of the many changes in the communications services industry, on July 19, 2004, IRS and Treasury issued an Advanced Notice of Proposed Rulemaking, in which comments and suggestions were requested describing the various technologies, services and methods of transmission currently available for transmitting data and voice communications and how they should be treated under the communications excise tax rules. See Announcement 2004-61, 2004-29 I.R.B. 67. There is significant doubt, however, whether the IRS and Treasury have the statutory authority to resolve many of the issues currently arising under those rules.

Similarly, cross-border rules are adapted from the Federal law specifying the apportionment methodology for mobile communications for State and local consumption tax purposes.

Option 2 also recognizes that service providers may bundle their customer offerings in a variety of ways. Such bundling may be functional in nature, such as voice accompanied by and integrated with data, or the bundling may be in the nature of marketing or discounts (e.g., a nontaxable data service "thrown in for free" when taxable voice service is purchased). The Treasury Department is given the authority to make the necessary determinations regarding these very fact-specific issues.

Option 2 may not be a complete solution to the problems inherent in present law. It does not address technological changes and practices that may make certain nontaxable data services a close substitute for taxable voice services. It therefore tends to favor such data services over voice services, and therefore may inhibit the growth of taxable voice services relative to nontaxable data services. While this distinction also exists under present law, its impact may grow significantly in the future.

**Option 3**

This option is based on the premise that taxation of voice services and not data and internet services creates an economic distortion. Voice and data are becoming interchangeable and integrated parts of modern communications. For example, cellular phones send and receive text messages and may access the Internet as well as transmit and receive voice communications. Cellular phones are being manufactured that may operate using VOIP through "Wi-Fi"[844] access, as well as through more traditional means. As voice phone service migrates to using Internet protocol, there may be no way to distinguish "packets" of voice and "packets" of data. It is also expected that users will integrate their Internet data and voice applications. Consequently, both data and voice are taxable services under this option.

Extending the tax to all communications requires taxing Internet access, bandwidth capacity, and the transmission of cable and satellite television, as these are close substitute means for delivery of information and other content. This will make the distinction between communications services (including data) and information services increasingly important. While it may be relatively simple at this time for a cable company to apportion its revenue between the transport of information and the information itself, it may become more difficult as technology develops. In addition, the resale exemption is intended to prevent double taxation of the communications component of services.

While Option 3 will still leave distortions in the market between communications services and other goods and services, Option 3, unlike Option 2, should minimize or eliminate distortion in the markets for different communications services.

[844] "Wi-Fi" is a wireless local area network product through which one may access the Internet, based on IEEE 802.11 specification.

Internal Revenue Service
United States Department of the Treasury

**Internal Revenue Bulletin: 2006-25**
**June 19, 2006**

**Notice 2006-50**

***Communications Excise Tax; Toll Telephone Service***

---

**Table of Contents**


- SECTION 1. PURPOSE
- SECTION 2. BACKGROUND
- SECTION 3. TERMS DEFINED
- SECTION 4. EFFECT OF ABIG, OFFICEMAX, AMTRAK, FORTIS, AND REESE BROS.
- SECTION 5. REQUESTS FOR CREDIT OR REFUND
- SECTION 6. EFFECT ON OTHER DOCUMENTS
- SECTION 7. DRAFTING INFORMATION


## SECTION 1. PURPOSE

(a) *In general*. As further described in this notice, the Internal Revenue Service will follow the holdings of *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) (*ABIG*); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) (*Amtrak*); *Fortis v. United States*, 2006 U.S. App. LEXIS 10749 (2d Cir. Apr. 27, 2006); and *Reese Bros. v. United States*, 2006 U.S. App. LEXIS 11468 (3d Cir. May 9, 2006). These cases hold that a telephonic communication for which there is a toll charge that varies with elapsed transmission time and not distance (time-only service) is not taxable toll telephone service as defined in § 4252(b)(1) of the Internal Revenue Code. As a result, amounts paid for time-only service are not subject to the tax imposed by § 4251. Accordingly, the government will no longer litigate this issue and Notice 2005-79, 2005-46 I.R.B. 952, which states otherwise, is revoked.

(b) *Credits and refunds*. Taxpayers may be entitled to request credit or refund of the excise taxes paid for the services covered by this notice. This notice provides guidance regarding these requests. In addition, the Commissioner will authorize the scheduling of an overassessment under § 6407 to keep the period of limitations open for these requests. This overassessment will apply to all taxpayers and to all taxes paid for the services covered by this notice beginning with the tax paid on services that were billed to customers after February 28, 2003.

## SECTION 2. BACKGROUND

(a) *In general*—(1) *Tax imposed*. Section 4251(a)(1) imposes a tax on amounts paid for communications services.

(2) *Payment of tax*. Section 4251(a)(2) provides that the tax imposed shall be paid by the person paying for the service (taxpayer). Section 4251(b)(2) provides that the applicable percentage is 3 percent of amounts paid for communications services.

(3) *Collection of tax*. Section 4291 provides that the tax is collected by the person receiving the payment (collector). In most cases, the collector, which is also responsible for paying over the tax to the government, is the telecommunications company that provides the communications services to the taxpayer.

PLAINTIFF'S EXHIBIT 2

(b) *Definitions*—(1) *Communications services*. Section 4251(b)(1) provides that the term communications

services means (A) local telephone service; (B) toll telephone service; and (C) teletypewriter exchange service. This notice does not address teletypewriter exchange service.

(2) *Local telephone service*. Section 4252(a) provides that local telephone service means (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system; and (2) any facility or service provided in connection with such a service. Local telephone service does not include any service that is a toll telephone service as defined in § 4252(b) or a private communications service as defined in § 4252(d). This notice does not address private communications service.

(3) *Toll telephone service*—(i) *Time and distance*. Section 4252(b)(1) provides that toll telephone service includes a telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication and for which the charge is paid within the United States.

(ii) *Periodic charge for a specified area*. Section 4252(b)(2) provides that toll telephone service also includes a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

(c) *Rev. Rul. 79-404*. Rev. Rul. 79-404, 1979-2 C.B. 382, concludes that a long distance telephone call for which the charge varies with elapsed transmission time but not with distance is toll telephone service described in § 4252(b)(1).

(d) *Notice of proposed rulemaking*. In a notice of proposed rulemaking (REG-141097-02, 2003-1 C.B. 807 [68 FR 15690]; April 1, 2003), the Service proposed an amendment to the Facilities and Services Excise Taxes Regulations to provide that toll telephone service described in section 4252(b)(1) may include a communication service for which the charge does not vary with the distance of each individual communication.

(e) *Recent litigation*. *ABIG*, *OfficeMax*, *Amtrak*, and *Reese Bros.* hold time-only service is not toll telephone service as defined in § 4252(b)(1). Further, *ABIG*, *OfficeMax*, and *Reese Bros.* hold that the communications service provided was not a service described in § 4252(b)(2) because the end result was not a "periodic charge" based on total elapsed time but rather a monthly bill based on a summation of toll charges for individual communications. (In *Amtrak*, toll telephone service described in § 4252(b)(2) would have been exempt from tax under the common carrier exception in § 4253(f).) *ABIG*, *OfficeMax*, *Amtrak*, and *Reese Bros.* also hold that the communications services provided were not local service, notwithstanding the access the services provided to the local telephone system. (*Fortis* affirms, in a *per curiam* opinion, a district court decision reaching the same results.)

(f) *Notice 2005-79*. Notice 2005-79, 2005-46 I.R.B. 952, states that the Service will continue to assess and collect the tax imposed by § 4251 on all taxable communications services, including those similar to the services in *ABIG*.

**SECTION 3. TERMS DEFINED**

The following terms are defined solely for purposes of this notice:

(a) *Bundled service*. Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes, for example, Voice over Internet Protocol service, prepaid telephone cards, and plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service.

(b) *Local-only service*. Local-only service is local telephone service, as defined in § 4252(a), provided under a plan that does not include long distance telephone service or that separately states the charge for local service on its bill to customers. The term also includes services and facilities provided in connection with service described in the preceding sentence even though these services and facilities may also be used with

long distance service. See, for example, Rev. Rul. 72-537, 1972-2 C.B. 574 (telephone amplifier); Rev. Rul. 73-171, 1973-1 C.B. 445 (automatic call distributing equipment); and Rev. Rul. 73-269, 1973-1 C.B. 444 (special telephone).

(c) *Long distance service.* Long distance service is telephonic quality communication with persons whose telephones are outside the local telephone system of the caller.

(d) *Nontaxable service.* Nontaxable service means bundled service and long distance service.

## SECTION 4. EFFECT OF *ABIG, OFFICEMAX, AMTRAK, FORTIS,* AND *REESE BROS.*

(a) *Tax treatment of communications service after ABIG, OfficeMax, Amtrak, Fortis, and Reese Bros.* The Service will follow *ABIG*, *OfficeMax*, *Amtrak*, *Fortis*, and *Reese Bros.* Accordingly, taxpayers are no longer required to pay tax under § 4251 for nontaxable service. In addition, collectors or taxpayers may request a refund of tax paid under § 4251 on nontaxable service that was billed to the taxpayers during the period after February 28, 2003, and before August 1, 2006 (the relevant period).

(b) *Tax on local-only service.* Collectors should continue to collect and pay over the § 4251 tax on amounts paid for local-only service. As noted in section 3(b) of this notice, local-only service includes amounts paid for facilities or services provided in connection with local telephone service. Thus, for example, tax will continue to be imposed on amounts paid by a taxpayer for renting an amplifier phone provided in connection with local telephone service that is subject to tax.

(c) *Effect on collectors.* Collectors are directed to cease collecting and paying over tax under § 4251 on nontaxable service that is billed after July 31, 2006, and are not required to report to the IRS any refusal by their customers to pay any tax on nontaxable service that is billed after May 25, 2006. Collectors should not pay over to the IRS any tax on nontaxable service that is billed after July 31, 2006. The form will require collectors to certify that for the third quarter of 2006 the § 4251 tax reported on the Form 720 does not include any tax on nontaxable service that was billed after July 31, 2006. Consequently, the IRS will deny all taxpayer requests for refund of tax on nontaxable service that was billed after July 31, 2006. All such requests should be directed to the collector. In addition, collectors may repay to taxpayers the tax on nontaxable service that was billed before August 1, 2006, but are not required to repay such tax. Collectors may also request a refund or make an adjustment to their separate accounts, as appropriate, subject to the provisions of § 6415 and section 5(d)(4) of this notice. Collectors must continue to collect and pay over tax under § 4251 on amounts paid for local only service.

## SECTION 5. REQUESTS FOR CREDIT OR REFUND

(a) *In general*—(1) *Request must follow this notice.* The Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this notice.

(2) *Form of request.* Taxpayers may request a credit or refund of tax on nontaxable service that was billed after February 28, 2003, and before August 1, 2006, only on their 2006 Federal income tax returns. For this purpose, the 2006 income tax return is the income tax return for calendar year 2006 or for the first taxable year including December 31, 2006. Forms 1040 (series), 1041, 1065, 1120 (series), and 990-T will include a line for requesting the overpayment amount. Persons that are not otherwise required to file a federal income tax return must nevertheless file a return to obtain the credit or refund. Except as provided in section 5(d)(4) of this notice, a request for this credit or refund on any other form (such as a Form 720, 843, or 8849) will not be processed by the Service. Taxpayers will be permitted to request the safe harbor amount under paragraph (c) of this section only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006.

(3) *Guidance on the form.* The instructions to the respective federal income tax return forms will provide additional guidance. The forms and instructions will require taxpayers to certify that (1) the taxpayer has not received from the collector a credit or refund of the tax paid on nontaxable service billed during the relevant period and (2) the taxpayer will not ask the collector for a credit or refund of that tax and has withdrawn any such request that was previously submitted. The instructions will also require that taxpayers, except for those individuals using the safe harbor amount, retain records that substantiate the request. These records should include bills from the collector that show the amount of tax charged for nontaxable service for each month during the relevant period and receipts, canceled checks, or other evidence that the amount requested was

actually paid.

(b) *Period of request.* The Commissioner will authorize the scheduling of an overassessment under § 6407 to preserve the period of limitations during which taxpayers may request refunds of the tax on nontaxable service that was billed to customers after February 28, 2003, and before August 1, 2006. Therefore, requests may be made for credits or refunds of tax paid for nontaxable service billed after February 28, 2003, and before August 1, 2006.

(c) *Amount of the request*—(1) *Requests by individual taxpayers*—(i) *Safe harbor amount.* Individual taxpayers may request a safe harbor amount. No documentation will be required to be submitted or kept to support the safe harbor request. However, taxpayers will be permitted to request the safe harbor amount only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006; have not received a credit or refund of these taxes from the service provider, and either have not requested such a credit or refund from the service provider or have withdrawn any such request. The amount of this safe harbor is still under consideration and will be announced in later guidance.

(ii) *Actual amount.* Taxpayers that do not request the safe harbor amount may request a credit or refund of the actual amount of tax they paid.

(d) *How to file*—(1) *Requests by individual taxpayers.* Individual taxpayers may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 Form 1040, 1040A, or 1040-EZ, *U.S. Individual Income Tax Return.* Individuals who are not otherwise required to file a federal income tax return must nevertheless file Form 1040EZ-T to request the credit or refund. Individual taxpayers, including Schedule C filers, may request either the safe harbor amount or the actual amount of tax paid for nontaxable service.

(2) *Requests by taxpayers other than individual taxpayers.* Taxpayers other than individual taxpayers (entities) may request only the actual amount of tax paid on nontaxable service billed during the relevant period. No safe harbor amount is allowed for entities.

(3) *Requests by entities*—(i) *In general.* Entities may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 income tax returns. Any part of the credit or refund attributable to tax payments that were deducted as an ordinary and necessary business expense (including in the determination of unrelated business taxable income) must be included in income for the taxable year in which the refund is received or accrued to the extent that the tax payments reduced the amount of federal income tax (or unrelated business income tax) imposed.

(ii) *Partnerships.* A partnership, as defined in § 7701(a)(2), may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1065, *U.S. Return of Partnership Income.* Any amount of the credit or refund included in partnership income and any interest on the credit or refund must be reported on the partnership's return for the taxable year in which received or accrued and must be allocated to its partners on the Schedule K-1, *Partner's Share of Income, Deductions, Credits, etc.*, for that taxable year.

(iii) *S Corporations.* An S Corporation, as defined in § 1361, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120S, *U.S. Income Tax Return for an S Corporation.* Any amount of the credit or refund included in S Corporation income and any interest on the credit or refund must be reported on the S Corporation's return for the taxable year in which received or accrued and must be allocated to its shareholders on the Schedule K-1, *Shareholder's Share of Income, Deductions, Credits, etc.*, for that taxable year.

(iv) *Estates and trusts.* An estate or a trust, as defined in § 301.7701-4(a) of the Procedure and Administration Regulations, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1041, *U.S. Income Tax Return for Estates and Trusts.* Any amount of the credit or refund included in the estate's or trust's income and any interest on the credit or refund must be reported on the estate's or trust's Form 1041, *U.S. Income Tax Return for Estates and Trusts*, for the taxable year in which received or accrued. However, for a trust that is treated as owned by the grantor or other person under subpart E (§ 671 and following), part I, subchapter J, chapter 1 of the Internal Revenue Code (grantor trust), the owner of the trust may request a credit or refund of federal excise taxes treated as paid by the owner for nontaxable service only on its applicable 2006 federal tax return.

(v) *Tax exempt organizations.* An organization that is described in § 501(a) may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 990-T, *Exempt Organization Business Income Tax Return.* Tax exempt organizations that are not otherwise required to file a federal income tax return must nevertheless file Form 990-T to request the credit or refund. Any amount of the credit or refund included in the organization's unrelated business taxable income must be reported on the organization's Form 990-T, *Exempt Organization Business Income Tax Return*, for the taxable year in which received or accrued. An organization that is subject to tax on its interest income must also report any interest on the credit or refund on its Form 990-T, *Exempt Organization Business Income Tax Return*, for the taxable year in which received or accrued.

(vi) *Corporations.* A corporation, as defined in § 7701(a)(3), that is not described in section 5(d)(3)(iii) of this notice may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120 (series) income tax return (generally, Form 1120, *U.S. Corporation Income Tax Return*). Any amount of the credit or refund included in the corporation's income and any interest on the credit or refund must be reported on the corporation's income tax return for the taxable year in which received or accrued. Corporations that are not otherwise required to file a federal income tax return must nevertheless file Form 1120 (series) to request the credit or refund.

(vii) *Other nonfiling entities.* Entities that are not otherwise required to file a federal income tax return must file Form 990-T to request the credit or refund.

(4) *Requests and adjustments by collectors*—(i) *Section 6415 conditions to allowance.* The conditions to allowance described in § 6415 apply to all requests and adjustments by collectors, as defined by section 2(a)(3) of this notice. Thus, a request by a collector is allowed only if the person that paid over the tax establishes that it has repaid the amount of the tax to the person from whom the tax was collected, or obtains the written consent of such person to the allowance of the credit or refund.

(ii) *Requests for regular method collectors*—(A) *In general.* A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the government based on amounts actually collected under § 40.6302(c)-1(a)(2)(i) of the Excise Tax Procedural Regulations (regular method collectors) may request a credit or refund.

(B) *Form of the request.* Regular method collectors may use Form 720X, *Amended Quarterly Federal Excise Tax Return*, line 1, IRS No. 22, for credit or refund of amounts collected and repaid to taxpayers.

(iii) *Account adjustments for alternative method collectors.* A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the government based on amounts considered as collected under § 40.6302(c)-1(a)(2)(ii) (alternative method collectors) may adjust the separate account for the amount of an overpayment. The required adjustment to the separate account is described in § 40.6302(c)-3(b)(2)(ii)(C). The adjustment is reflected on Form 720, Schedule A, line 2, but may not reduce tax liability on Form 720 below zero.

(e) *Interest on the credit or refund included in income.* If a taxpayer requests a credit or refund of the actual amount of tax paid, interest on the credit or refund of the tax paid for nontaxable service must be included as income on the taxpayer's income tax return for the taxable year in which the interest is received or accrued. Thus, individuals are generally required to report the interest on their 2007 income tax returns.

(f) *Estimated tax effects.* Although the credit or refund allowed to a taxpayer under this notice will be requested on the taxpayer's income tax return, it is not a credit against tax for purposes of §§ 6654 and 6655. Accordingly, the taxpayer may not take the credit or refund into account in determining the amount of the required installments of estimated tax for 2006. In determining the amount of the required installments of estimated tax for 2007, the income attributable to the credit or refund is taken into account on the date the income is paid or credited in the case of a cash method taxpayer and on the date the return making the request is filed in the case of an accrual method taxpayer.

(g) *Requests that do not follow the provisions of this notice.* Requests that do not follow the provisions of this notice (whether filed before or after its publication)—

(1) Will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003; and

(2) Will be processed normally to the extent they relate to the tax paid on nontaxable service that was billed before March 1, 2003.

**SECTION 6. EFFECT ON OTHER DOCUMENTS**

Notice 2005-79, 2005-46 I.R.B. 952, is revoked. Rev. Rul. 79-404, 1979-2 C.B. 382, will be revoked in a later revenue ruling.

**SECTION 7. DRAFTING INFORMATION**

The principal author of this notice is Taylor Cortright of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact (202) 622-3130 (not a toll-free call).

Prev Up Next
Home

More Internal Revenue Bulletins

Back to Search Results List
Add Document to Keep List Previous Document in List Print Text Only Read Previous
Export to File Read Next
First Search Term



# LTR-RUL, UIL No. 4251.00-00 Communications tax (Taxable v. not taxable), Letter Ruling 200133008, Added to CCH Online, (Aug 20,2001)

*[The IRS did not release LTR 200133007.]*
**Letter Ruling 200133008, May 24, 2001**
CCH IRS Letter Rulings Report No. 1277, 08-22-01
IRS REF: Symbol: CC:PSI:8-PLR-104389-01

**Added to CCH Online (Aug 20,2001)**

**Uniform Issue List Information:**

UIL No. 4251.00-00

Communications tax (Taxable v. not taxable)

[Code Sec. 4251]

This is in response to a letter ruling request regarding Taxpayer's responsibility for the excise tax imposed by §4251 of the Internal Revenue Code on amounts paid for communication services. Your authorized representative submitted this request on your behalf. Taxpayer has represented the following.

Taxpayer builds communication networks and sells access to these networks to internet service providers (ISPs). ISPs provide their customers access to the ISPs' services via Taxpayer's communication networks.

To build the networks Taxpayer purchases from local exchange carriers (LECs) two types of line services. Taxpayer purchases local primary rate interface (PRI) line service between the LEC's central office, where ISPs' customers' calls are received, and Taxpayer's modem bank. This PRI line service is a one way line service that permits Taxpayer to receive, but not to initiate, voice and data transmissions. Taxpayer also purchases other line services that connect its modem bank to its data network and ultimately to the ISPs' services (other line services). Taxpayer sells to ISPs access to these line services.

An ISP's customers access the ISP's services by calling via a modem into the LEC's central office. The customer's call is then routed to Taxpayer's modem bank over a PRI line. At the modem bank, the customer's call is routed over other line services to the Taxpayer's data network and ultimately the ISP's services.

Section 4251 imposes a tax on amounts paid for communications services. The term communications services means local telephone service, toll telephone service, and teletypewriter exchange service. Section 4251 (a)(2) provides that the tax is paid by the person paying for the service. Under §4291, the person receiving the payment for the service is responsible for collecting the tax from the person making the payment.

Section 4252(a) defines local telephone service as: (1) the access to a local telephone system and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and (2) any facility or service provided in connection with a service described in (1). The term local telephone service does not include any service which is a toll telephone service or a private communication service.

Section 4252(b) defines toll telephone service as: (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and

PLAINTIFF'S EXHIBIT 3

(B) the charge is paid in the United States, and (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with the service is located.

Taxpayer's purchase of the PRI line service and the other line services do not provide Taxpayer with the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of a local telephone system. Therefore, Taxpayer's payments to the LECs for its line services are not amounts paid for local telephone service as defined in §4252(a) . Likewise, Taxpayer's sale of access to these line services does not give ISPs the privilege of communication as defined in §4252(a) . Therefore, amounts paid by the ISPs to Taxpayer for access to these line services are not amounts paid for local telephone service as defined in §4252(a) .

Taxpayer's purchase of the PRI line service and the other line services do not provide Taxpayer with telephonic communication for which there is a toll charge for each individual communication or the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area that is outside the local telephone system area in which the station provided with the service is located. Therefore, Taxpayer's payments to the LECs for its line services are not amounts paid for toll telephone service as defined in §4252(b) . Likewise, Taxpayer's sale of access to these line services does not give ISPs the privilege of toll telephone service as defined in §4252(b) . Therefore, amounts paid by the ISPs to Taxpayer for access to these line services are not amounts paid for toll telephone service as defined in §4252(b) . Neither the amounts Taxpayer pays to the LECs for line services nor the amounts paid to Taxpayer by the ISPs for access to these line services are for teletypewriter exchange service as described in §4252(c) .

Accordingly, based on Taxpayer's representations:

(1) Amounts paid by Taxpayer to the LECs for the purchase of PRI line service are not subject to the communications excise tax imposed by §4251 .

(2) Amounts paid by Taxpayer to the LECs for the purchase of other line services from its modem bank to ISPs' services are not subject to the communications excise tax imposed by §4251 .

(3) Amounts paid to Taxpayer by ISPs for providing access over the lines described above are not subject to the communications excise tax imposed by §4251 . Consequently, Taxpayer has no collection obligation under §4291 with respect to these amounts.

This ruling letter is directed only to the taxpayer who requested it. Section 6110(k)(3) provides that it shall not be used or cited as precedent.

Sincerely, Associate Chief Counsel (Passthroughs and Special Industries), Bernard Weberman, Assistant to the Branch Chief, Branch 8.

---

Back to Search Results List
Add Document to Keep List
First Search Term
Previous Document in List
Print Text Only
Export to File
Read Previous
Read Next

---

[ Return to top of document ]
Click here to download the link templates for your publications.

*We welcome your comments and suggestions on our web site.*
*Please send them to CSINTNET@cch.com*

Internal Revenue Service
United States Department of the Treasury

69 FR 40345

**Internal Revenue Bulletin: 2004-29**
**July 19, 2004**

**Announcement 2004-61**

***Excise Taxes; Communications Services***

---

**Table of Contents**


- AGENCY:
- ACTION:
- SUMMARY:
- DATES:
- ADDRESSES:
- FOR FURTHER INFORMATION CONTACT:
- SUPPLEMENTARY INFORMATION:
  - Background
  - Special Analysis


**AGENCY:**

Internal Revenue Service (IRS), Treasury.

**ACTION:**

Advance notice of proposed rulemaking.

**SUMMARY:**

This document requests information from the public on issues that the IRS may address in proposed regulations (REG-137076-02) relating to the tax on amounts paid for communications services. All materials submitted will be available for public inspection and copying.

**DATES:**

Written and electronic comments must be received by September 29, 2004.

**ADDRESSES:**

Send submissions to: CC:PA:LPD:PR (REG-137076-02), room 5203, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-137076-02), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, N.W., Washington, DC, or sent electronically, via the IRS Internet site at *www.irs.gov/regs* or via the Federal eRulemaking Portal at *www.regulations.gov* (indicate IRS and REG-137076-02).

**FOR FURTHER INFORMATION CONTACT:**

Concerning submissions generally, the Regulations Unit, (202) 622-3628; concerning the proposals, Cyr McGreevy (202) 622-3130 (not toll-free numbers).

PLAINTIFF'S EXHIBIT 4

**SUPPLEMENTARY INFORMATION:**

**Background**

Section 4251 imposes tax on amounts paid for certain communications services, including local and toll telephone service. Section 4252(a) provides that local telephone service means the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system. Section 4252(b)(1) provides that toll telephone service includes a telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication. Section 4252(b)(2) provides that toll telephone service also includes a service that entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

A tax on communications services has existed for over 100 years. The communications services that currently are subject to the tax are defined in section 4252, which was enacted in its current form in 1965. That section describes the local and long distance telephone service sold under the 1965 Federal Communications Commission rules. Existing Treasury regulations do not reflect the 1965 statutory change.

Sections 4252(a) and (b) define local and toll telephone service in terms of telephonic or telephonic quality communication, which means voice quality communication. Since 1965, numerous communications services have been developed and marketed, the methods of transmission have expanded, and the industry has been deregulated.

As a result of these changes, questions have arisen concerning the application of section 4251 to certain communications services that were not available in 1965. In response to these questions, Treasury and the IRS are considering proposing regulations that would revise the existing regulations to reflect changes in technology.

The test for taxability under section 4251 is whether a service for which an amount is paid is a communications service described in section 4252. The purpose of this ANPRM is to solicit information from the public on how present technology should be treated within the description of telephonic or telephonic quality communication in the definitions of local and toll telephone service under section 4252.

To ensure that any new regulations accurately reflect the state of today's communications services industry, Treasury and the IRS request that communications services providers and other interested parties submit comments and suggestions describing the various technologies, services, and methods of transmission currently available for transmitting data and voice communications and how they should be treated under section 4251.

**Special Analysis**

This advance notice of proposed rulemaking is not a significant regulatory action for purposes of Executive Order 12866, "Regulatory Planning and Review."

Mark E. Matthews,
*Deputy Commissioner for*
*Services and Enforcement.*

**Note**

(Filed by the Office of the Federal Register on July 1, 2004, 8:45 a.m., and published in the issue of the Federal Register for July 2, 2004, 69 F.R. 40345)

Prev Up Next
Home

More Internal Revenue Bulletins

**TAX-FREE INTERNET ACT OF 1997 (House of Representatives - March 06, 1997)**

[Page: H786] GPO's PDF

The SPEAKER pro tempore. Under a previous order of the House, the gentleman from Florida [Mr. **Weldon**] is recognized for 5 minutes.

Mr. WELDON of Florida. Mr. Speaker, it is only fitting that I should rise now, the Representative from the home State of the alligator, to address a particular area of our economy that I would like to set aside as not eligible for taxation, and that is the Internet.

Specifically, I have filed a bill today entitled the Tax-Free Internet Act of 1997. This legislation amends the Internal Revenue Code to declare that fees for Internet access and other online services are not and shall not be subject to Federal taxation. Furthermore, the bill would prevent any Federal department from using its funds to study the revenue potential of Internet taxation. I believe that this legislation is a strong statement in support of the free and unfettered development of this industry. My bill has already been endorsed by several online services and Internet service providers.

America Online, one of the Nation's most widely used Internet-related service providers, said, and I quote, `We commend your leadership in authoring and sponsoring the Tax-Free Internet Act of 1997. AOL strongly supports your policy efforts. Any new tax could threaten the continued growth of this global medium.'

The President of Erol's online service adds, `This legislation is a very positive development, and I give it my full support.'

Mr. Speaker, we must not allow this budding industry to be smothered by Federal taxation. A few of the States, including my own State of Florida, have already initiated legislation to exempt the Internet and online service access fees from State and local taxes. We on the Federal level should do likewise.

As the United States Internet Providers Association says of my bill: `We support the efforts of all informed policymakers to protect technology innovation and the growth of the industry through sound legislation. This is a step in the right direction.'

PLAINTIFF'S EXHIBIT 5

Mr. Speaker, let us here resolve not to interfere with the technological phenomenon which has done so much to inform and educate so many millions of Americans. Let us restrain the reach of government so as not to smother the vitality and creativity that characterize this new frontier in communications.

---

| *THIS SEARCH* | *THIS DOCUMENT* | *THIS CR ISSUE* | *GO TO* |
|---|---|---|---|
| Next Hit | Forward | Next Document | New CR Search |
| Prev Hit | Back | Prev Document | HomePage |
| Hit List | Best Sections | Daily Digest | Help |
| | Contents Display | | |

---

THOMAS Home | Contact | Accessibility | Legal | FirstGov